IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 13–cv–02584–KMT

OCD TELLURIDE LLC, a Colorado limited liability company,

     Plaintiff,

v.

BLANEY MCMURTRY LLP, an Ontario limited liability partnership,

     Defendant.

---

**ORDER**

---

     The matter before the court is "Defendant's Motion to Dismiss Plaintiff's RICO Conspiracy Claim." ("RICO Mot." [Doc. No. 29], filed Apr. 8, 2015.) Plaintiff filed its Response on April 8, 2015 ("RICO Resp.") [Doc. No. 30], and Defendant filed its Reply on April 29, 2015 ("RICO Reply") [Doc. No. 39]. Defendant moves to dismiss Plaintiff's Racketeer Influenced and Corrupt Organizations Act ("RICO") claim for failure to state a claim upon which relief can be granted, arguing that Plaintiff's Complaint fails to allege that Defendant, the law firm employing attorney Alvin Meisels, participated in or conspired to participate in racketeering activity. (RICO Mot. at 1–2.)

     Also before the court is "Defendant's Motion to Dismiss for Lack of Standing and for Summary Judgment" ("Standing Mot." [Doc. No. 47], filed July 17, 2015.) Plaintiff filed its response on August 6, 2015 ("Standing Resp.") [Doc. No. 49], and Defendant filed its reply on September 3, 2015 ("Standing Reply") [Doc. No. 53]. Here, Defendant Blaney moves for

dismissal or for judgment against OCD Telluride, LLC ("OCD Telluride"), arguing that Plaintiff

lacks standing to sue Defendant for its failure to establish an "injury-in-fact."   (Standing Mot. at

1–2.)

## STATEMENT OF THE CASE

Plaintiff, OCD Telluride, is a Colorado limited liability company organized to develop a

real estate project in Telluride, Colorado.    (Compl. [Doc. No. 1] at ¶ 4.)   Vincent DiNapoli,

Charles E. Dewey, Jr. and Anthony T. Conforti are among the members of OCD Telluride.

(Letter from Attorney Anthony T. Conforti, October 15, 2009 [Doc. No. 48-2], hereinafter

"Conforti 2009 letter.")   A related entity with overlapping members, O.C.D., LLC, was the owner

of the land upon which the development project was to be built and was alleged to have been

"contractually bound to convey the property to [Plaintiff] OCD Telluride, LLC."   (Conforti 2009

letter; *see also* Affidavit of Anthony T. Conforti [Doc. No. 49-1], hereinafter "Conforti Aff." at ¶

2).[1]

This matter began in the early fall of 2009 when Plaintiff sought a loan to fund its planned

Telluride development.   (Compl. at ¶ 26.)   A loan broker working with Plaintiff and its members

located a lender, First Central Mortgage Funding, Inc. ("FCMF"), that appeared capable of making

a loan of the size and nature required by Plaintiff.   (*Id*. at ¶ 27.)   The loan broker, on behalf of

Plaintiff, made contact with FCMF and requested a reference.   FCMF, through Sandy Hutchens,

using the alias Moshe Ben Avraham, provided the name and contact information of Canadian

---

[1]The facts referenced in this section, which have been taken from sources other than the
Complaint, are not material to the conclusions of the court on the RICO Motion to Dismiss,
however are relevant to subject matter jurisdiction with respect to standing and issues affecting the
court's discretion.

attorney Alvin Meisels as its reference.   (*Id*. at ¶¶ 27, 11.)   Defendant Blaney McMurtry LLP

("Blaney") is a Canadian law firm that had hired attorney Meisels less than a month previous to his

name being provided as a reference.[2]   (*Id*. ¶ 5, 16.)

In early October 2009, upon receiving the reference from FCMF, Vincent DiNapoli

directly telephoned Meisels, who assured DiNapoli that FCMF had made many loans in the United

States and that it had the capacity to fund a $20 million loan.   (*Id*. at ¶ 28.)   On or about October

5, 2009, after FCMF had issued a $20 million loan commitment, another member of the Plaintiff,

Attorney Anthony Conforti, also telephonically spoke to Meisels who repeated what he had told

DiNapoli, to wit: that FCMF had made many loans in the United States and that it had the capacity

to fund a $20 million loan.   (*Id*. at ¶ 29.)   According to the Plaintiff, Meisels did not reveal to

DiNapoli or to Conforti that the founder and owner of FCMF, Sandy Hutchens a/k/a Moshe Ben

Avraham, was actually a felon whose most recent conviction occurred four years previous in April

2005 on four counts of fraud and one count of drug distribution, nor did Meisels reveal that

Hutchens/Avraham was on probation and/or under house arrest on those convictions when FCMF

was founded.   (*Id.* at ¶¶ 8–9, 45(g).)

Relying on Meisels' representations, Plaintiff executed an amended loan commitment on

October 19, 2009, showing OCD Telluride as the borrower on the loan.   (*Id.* at ¶ 31.)   Ultimately,

Plaintiff paid FCMF over $200,000.00 in fees via three separate wire transfers attempting to get

the loan closed.   (*Id.* at ¶ 31.)   The following payments were made to satisfy conditions of the

FCMF loan: October 15, 2009, $7,450.00 paid by Vincent DiNapoli via wire transfer from an

---

[2]The Complaint alleges that Meisels began his employment with Blaney on September 14, 2009.
(*Id.* at ¶ 16.)

O.C.D. bank account; October 27, 2009, $110,000.00 paid by Vincent DiNapoli via wire transfer from Attorney Conforti's trust account; and December 2, 2009, $81,000.00 paid by Vincent DiNapoli via wire transfer from Attorney Conforti's trust account.   (*Id.* at ¶ 32; *see also* Standing Resp., setting forth the accounts from which the payments were made.)   Plaintiff also paid $3,000 for an appraisal to meet the requirements of its loan agreement with FCMF.   (Compl. at ¶ 33.) After receiving Plaintiff's payments, however, FCMF refused to fund the loan based on allegedly pretextual reasons including Plaintiff's failure to comply with conditions that were not included within the several written loan commitment letters and FCMF's determination that the development had a low fair market value according to an appraisal procured by Hutchens.   (*Id.* at ¶ 34.)

Eventually a class action case was brought against a host of defendants including Blaney, Hutchens, Meisels, and others.   *See CGC Holding Company et al v. Hutchens et al,* Civil Action No. 11-cv-1012-RBJ-KLM (the "CGC Class Action").   Blaney reached a settlement with the class.   (RICO Mot. at 4.)   The Court certified a settlement class as to Blaney and approved the settlement agreement; however Plaintiff OCD Telluride was one of two opt-outs from the settlement and thereafter brought this separate case.   *Id.*   OCD Telluride has now noticed its intent to withdraw its request for exclusion filed in the CGC Class Action, and the parties in this case have stipulated that

> 2. . . . except as specified herein, OCD Telluride, LLC's participation as a Class Member in in the Meisels settlement[3] in the Class Action does not release, waive, estop or otherwise impair OCD Telluride LLC's currently-pending claims against Defendant Blaney McMurtry LLP in the within matter (the "Blaney Claims")[;] 3.

---

[3]Meisels also has reached a settlement in the CGC Class Action.

> The parties further stipulate and agree that the amount of any funds distributed to OCD Telluride, LLC in Civil Action No. 11-cv-1012 shall be set-off against the Blaney Claims[; and,] 4. Defendant Blaney McMurtry LLP does not by this stipulation waive any defenses of any nature whatsoever in this action that existed at any time prior to court approval of the Meisels settlement and Plaintiff's participation in same. Defendant further affirmatively states that it is not through this stipulation agreeing that Defendant has any vicarious liability for Meisels' conduct, and Defendant expressly states that it has no such liability.

("Stipulation Regarding OCD Telluride LLC's Participation in Settlement" [Doc. No. 63].)   It appears OCD Telluride, then, is entitled to share in proceeds coming from payments made by Meisels without jeopardizing its claim against Blaney, at least to the extent it is not made whole by the Meisels' settlement.

## LEGAL STANDARD

### I.      *Fed. R. Civ. P. 12(b)(1), Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction.   Fed. R. Civ. P. 12(b)(1).   Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.   Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.   *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).   The issue of standing is jurisdictional in nature and is reviewed as a question of subject-matter jurisdiction under Rule 12(b)(1).   *Coalition v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004).

The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).   A court lacking

jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909.   The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).   When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).   Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

## II.   *Fed. R. Civ. P. 56, Summary Judgment*

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue

for trial on a material matter." *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).   The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).   A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010).   The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517.   At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

### III.     *Fed. R. Civ. P. 12(b)(6), Failure to State a Claim*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."   *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."   *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*.   The *Iqbal* evaluation requires two prongs of analysis. First, the Court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81.   Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."   *Id*. at 681.   If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.   *Id*. at 679.

Notwithstanding, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste Mgmt.*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

## IV.    18 U.S.C. § 1962(d), RICO Conspiracy

RICO establishes a civil cause of action for persons injured as a result of a prohibited racketeering activity. 18 U.S.C. § 1962(c); *see also Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010). To prove a RICO violation, a plaintiff must show that the defendant violated the RICO statute, and the plaintiff was injured "by reason of" that violation. 18 U.S.C. §§ 1962, 1964(c). A defendant violates RICO directly when he (1) participates in the conduct (2) of an enterprise (3) through a pattern of (4) racketeering activity. *See Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir.2006).[4]

Pursuant to § 1962(d), conspiracy to commit a RICO violation occurs when a conspirator adopts the goal of furthering the RICO enterprise, even if the conspirator does not commit a

---

[4]Section 1961(1)(B) describes the qualifying "racketeering activities," or "predicate acts," which include wire fraud.

predicate act.   *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014)

(underlying class action case concerning the same facts as the instant matter.).   *See also United*

*States v. Randall*, 661 F.3d 1291, 1297 (10th Cir. 2011).   Whereas § 1962(c) creates liability to

conduct or participate in the conduct of a RICO enterprise's affairs through a pattern of

racketeering activity, § 1962(d) simply creates the liability from conspiring to do so.   *See Salinas*

*v. United States,* 522 U.S. 52, 62–63 (1997).   In *Salinas,* the Supreme court emphasized that

conspiracy is distinct from the completed crime, and "a conspiracy may exist and be punished

whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the

public, and so punishable in itself."   522 U.S. at 65.   In fact, section 1962(d) does not require

proof that an enterprise actually existed at all.   *Id.*   Ultimately, the *Salinas* Court concluded that

to prove a violation of § 1962(d), "it suffices that [a defendant] adopt the goal of furthering or

facilitating the criminal endeavor," so long as that endeavor would, "if completed, . . . satisfy all

the elements of a substantive criminal offense." *Id.* at 65; *Gen. Steel Domestic Sales, LLC v.*

*Denver/Boulder Better Bus. Bureau,* No. 07-cv-02170, 2009 WL 535780, at *23 (D. Colo. Mar. 2,

2009) (civil RICO application).

Allegations of mere association with co-conspirators is not enough to support a claim of

RICO conspiracy. *See, e.g.*, *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1479 (D. Colo. 1995);

*CGC Holding Co., LLC v. Hutchens*, No. 11-cv-01012-RBJ-KLM, 2013 WL 798242, at *5 (D.

Colo. Mar. 4, 2013), *on reconsideration in part*, No. 11-cv-01012-RBJ-KLM, 2013 WL 1687678

(D. Colo. Apr. 18, 2013), *and aff'd in part as modified, rev'd in part sub nom. CGC Holding Co.,*

*LLC v. Broad & Cassel*, 773 F.3d 1076 (10th Cir. 2014)

10

**ANALYSIS**

I.      *Standing – Injury in Fact*

Although this motion was filed several months after the Defendant's RICO Motion, it must be addressed at the outset because standing is jurisdictional.   *In re Franklin Sav. Corp.*, 385 F.3d 1279, 1286 (10th Cir. 2004) (Jurisdictional issues must be addressed first and, if they are resolved against jurisdiction, the case is at an end.)   "Without jurisdiction the court cannot proceed at all in any cause.   Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."   *Ex parte McCardle,* 74 U.S 506, 514 (1868).   "On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes.   This question the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it."   *Great Southern Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 453 (1900).   The requirement that jurisdiction be established as a threshold matter "spring[s] from the nature and limits of the judicial power of the United States" and is "inflexible and without exception."   *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94–95 (1998) (citing *Mansfield, C. & L.M. Ry. Co. v. Swan,* 111 U.S. 379, 382 (1884)).

Defendant contends that Plaintiff has set forth no facts showing that OCD Telluride suffered any loss related to the payment of fees to obtain the FCMF loan.   (*See id*. at 6–10.) Defendant asserts that third parties, not Plaintiff, paid the $200,000.00 in fees to FCMF and Plaintiff has not alleged that it has any obligation to repay the money to the third parties.   (*See* Standing Reply at 2, 5–6.)   Further, Defendant states that non-party O.C.D. has since listed a

claim against FCMF for recovery of these fees as personal property in its bankruptcy filings, indicating that only O.C.D., not OCD Telluride, LLC, has the right to pursue legal claims associated with the alleged fraudulent acquisition of the fees by FCMF. (Decl. of Matthew D. Clark [Doc. No. 48], Ex. 4 at 4.)

Federal courts have subject matter jurisdiction to consider disputes only if the plaintiff has standing. *Hydro Res., Inc. v. EPA*, 608 F.3d 1131, 1144 (10th Cir. 2010) (*en banc*). A party has standing to pursue a claim in federal court only if:

> (1) it "suffered an 'injury in fact' - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) that injury is "fairly traceable to the challenged action of the defendant" rather than some third party not before the court; and (3) that injury is likely to be "redressed by a favorable decision."

*Id.* (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). *See also Roe v. Aegis Wholesale Corp.*, 13-cv-03040-KMT, 2014 WL 4746721, at *7 (D. Colo. Sept. 24, 2014). "Standing is determined as of the time the action is brought." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005). The plaintiff OCD Telluride, as the party seeking to invoke federal jurisdiction, has the burden of establishing each of these three elements. *Lujan*, 504 U.S. at 561; *Nova Health Sys.*, 416 F.3d at 1154. At the summary judgment stage, the plaintiff must set forth by affidavit or other evidence, specific undisputed facts that, if taken as true, establish each of these elements. 416 F.3d at 1154.

It is not contested that the loan commitment with FCMF to fund the development of the property owned by O.C.D.,[5] listed OCD Telluride as the borrower and OCD Telluride members

---

[5]O.C.D.'s ownership of the real property upon which the project was to be developed is irrelevant

12

"Charles E. Dewey, Jr., Antony (sic) T. Conforti and Vincent Dinapoli (sic)," as guarantors.[6]

(Standing Resp., Conforti Aff. [Doc. No. 49-1], Ex. 4 Amended Commitment [Doc. No. 49-5].)

The evidence presented by Plaintiff shows multiple communications between those involved in

the attempt to obtain funding, repeatedly confirming that the borrower on the loan was Plaintiff

OCD Telluride, not non-party O.C.D.   (Standing Resp. ¶¶ 9–16.)

     It is again undisputed, however, that the initial transfer of $7,450.00 sent to FCMF was

wire transferred from an O.C.D. bank account, not from an OCD Telluride bank account.

Plaintiff presents evidence in the form of Anthony Conforti's Affidavit that the $7,450.00 was a

loan from Mr. DiNapoli, a member of OCD Telluride, directly to his own LLC, which was

deposited into the bank account of O.C.D. merely as a convenience because a bank account had not

yet been established for OCD Telluride.   (Conforti Aff. at ¶ 13.)   The other two payments, also

loans from Mr. DiNapoli personally to his own LLC, OCD Telluride, were paid from Mr.

Conforti's attorney trust account, where Mr. DiNapoli had deposited the funds.   (*Id.*)   Conforti

affirms that all of the money sent to FCMF that is at issue in this lawsuit came from loans from

DiNapoli to OCD Telluride for the purpose of obtaining a loan to fund the development of the

project.   (Conforti Aff. at 4–5.)

     OCD Telluride's burden to establish standing at the Rule 12 stage of the case is to allege

sufficient facts, taken as true, to establish that the particularized money lost either directly to

FCMF as fees or because of FCMF's scheme belonged to OCD Telluride and that the injury to

to this standing challenge given that the FCMF loan was not a loan for purchase of property, but
rather a loan to build the planned development.

[6]Originally O.C.D. was to execute a guaranty limited to its equity interest in the property, however
that condition was later deleted.   (Conforti Aff. at ¶¶ 6–7.)

OCD Telluride by the loss of the money is fairly traceable to Defendant Blaney, and/or that the court could restore the money to OCD Telluride if there is a favorable decision.   At the summary judgment stage, in order to obtain judgment as a matter of law against Plaintiff's claims, Defendant Blaney's burden is to establish an undisputed factual record, with all reasonable inferences from the facts viewed in the light most favorable to OCD Telluride, that the money lost to FCMF does not belong to OCD Telluride, that the loss was not traceable to Defendant Blaney, and/or that the court could not restore the money to OCD Telluride if there is a favorable decision.   Under both standards, the issue raised by the Defendant is whether OCD Telluride was the owner of the money that was lost as a result of FCMF's scheme or if it otherwise had some stake or interest in the money.

This court finds that pursuant to Rule 12(b)(1), the Complaint, together with the Conforti Affidavit, adequately sets forth facts supporting injury-in-fact, including: that OCD Telluride's principals provided the capital to their LLC to initiate the development of the project at issue; that Plaintiff executed the amended loan commitment as borrower on the loan; that DiNapoli provided money as an investment in OCD Telluride to pay the advance fees required by FCMF; and that the impact of the alleged RICO conspiracy and negligent misrepresentations on OCD Telluride was that it lost its capital and did not obtain the loan from FCMF.[7]

The resolution of the issue at the summary judgment stage is even more straightforward. Plaintiff sets forth adequate undisputed admissible evidence to prove it was to be the borrower on

---

[7]Obviously, DiNapoli also lost money he invested in OCD Telluride; however, the members' losses are simply derivative of OCD Telluride's losses.   Whether the principals of an LLC can join in a claim of the LLC is irrelevant to this analysis.

14

the FCMF loan and that it obtained the money to pay the fees to FCMF through the investments of its OCD Telluride's members.   Blaney claims only that 1) a small part of the money that was paid to FCMF to procure the loan came from an O.C.D. bank account and the remainder came from an attorney's trust account, and 2) that O.C.D. claimed to have an ownership interest in the claim to recover the money against FCMF in it bankruptcy pleadings as support for its summary judgment argument.   The fact that the initial fees sent to FCMF came from an O.C.D. bank account is irrelevant and has been plausibly explained, thus creating, at the very least, a disputed issue of material fact.   Further, the fact that a claim against FCMF was listed as an asset on O.C.D.'s bankruptcy schedules does not suddenly create standing for O.C.D. nor does it alone defeat OCD Telluride's claims.   It is not uncommon for more than one person or entity to have standing to perfect claims on a given set of facts against the same or different defendants.   When more than one entity can pursue a single claim, the issue becomes one of apportionment, not failure of injury-in-fact.   Further, without delving into O.C.D.'s bankruptcy proceeding, the court has no way of knowing why the claim was listed as an O.C.D. asset or whether the filing was merely protective because the failure to so list could have subjected O.C.D. to claims of fraud on the bankruptcy court.

Viewed in the light most favorable to the plaintiff, the court finds there are genuine issues of material fact for trial.   Therefore, Defendant's Motion to Dismiss for Lack of Standing and for Summary Judgment must be denied.

## II.   First Claim for Relief – RICO

### A.   Respondeat Superior

Defendant asserts that the Complaint fails to set forth facts showing that the defendant law firm agreed to or intended to further Hutchen's and Meisels' RICO fraud scheme.   (RICO Mot. at 1–2, 7–10.)   The Complaint alleges that Blaney employed Meisels as an attorney and that Meisels "brought with him as a client, Sandy Hutchens, as well as several corporations under Hutchens' control, one of which was FCMF."   (Compl. at ¶ 16.)   As a result, Plaintiff claims that the law firm had an affirmative obligation to know the name, address, telephone, home address, phone number, and occupation of Sandy Hutchens and was required to know the full name, business address and phone number, identification number, place of incorporation, type of business, or activities engaged in, and the name position and contact information of individuals who provide instructions to the attorney for Hutchens' created business entities, including *inter alia*, FCMF. (*Id*. at ¶ 18.)   Plaintiff alleges that Defendant law firm *should have known* five specifically listed things about the allegedly illegal activities of Sandy Hutchens and his companies.   (*Id*. at ¶ 19(a)–(e).)   The Complaint then goes on to describe numerous acts allegedly performed by Meisels. While those activities conceivably could support a possible RICO charge against Meisels, as to the only defendant here, Blaney, the Complaint states only, "[t]he acts and failure to act by Meisels were within the scope of his agency and employment by Blaney McMurtry and, consequently, all such acts and failures to act are imputed thereto."   (*Id*. at ¶ 25, 59.)   Finally, Plaintiff alleges that "Meisels gave false information to . . . Plaintiff in the course of a business transaction in which Blaney McMurtry had a financial interest."   (*Id*. at ¶ 54.)   Plaintiff alleges, without specific

factual support, that Blaney received "payment of fees which were part of the fees advanced by Plaintiff under the loan commitment." [8]   (*Id.* at ¶ 46.)   These conclusory statements, unsupported by any factual allegations, are not entitled to a presumption of truth for purposes of ruling on a motion to dismiss under Rule 12(b)(6).   *Iqbal,* 556 U.S. at 679–81.   There are no allegations that Defendant Blaney actually had knowledge of the conspiracy or that Blaney took any action itself to further the racketeering activity or the conspiracy.

Discounting the receipt of fees conclusion, then, the sole basis of the RICO allegation by Plaintiff against Blaney is Blaney's alleged vicarious liability for the actions of its employee, Meisels, through the doctrine of respondeat superior.   (RICO Resp. at 9–11.)   Under the doctrine of respondeat superior, the "master is subject to liability for the torts of his servants committed while acting in the scope of their employment."   *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) (citing Restatement (Second) of Agency § 219(1) (Am. Law. Inst. 1957)).   The premise of respondeat superior is that one who is without fault otherwise, may be held vicariously liable for the wrongdoing of another under some circumstances.   *See* W. Prosser, Law of Torts 458 (4th ed. 1971).   In other words, a person or entity that benefits from the acts of a servant must

---

[8]It appears that Plaintiff is suggesting that Blaney received generated attorney fees billed by Meisels in the course of professional attorney representation of Hutchens and/or FCMF.   The Complaint does not specify whether Meisels joined Defendant as a partner or associate with respect to the generation of fees in general.   However, more importantly, the Complaint does not allege that Meisels billed any professional time to Hutchens or FCMF in connection with his telephone conferences with DiNapoli and Conforti or for any other professional services having to do with the subject loan.   Further, the Complaint does not allege that Hutchens or his companies actually paid Meisels or Blaney any professional fees for Meisels' recommendations or legal services, much less that any payment came directly from the fees Hutchens charged Plaintiff, nor does it allege that Meisels contributed any money generated by his activities on behalf of Hutchens and/or FCMF in connection with the subject loan to Blaney, with whom he had been associated for less than one month.

17

pay for the wrongs committed by the servant.   *McClelland v. Facteau*, 610 F.2d 693, 695 (10th Cir. 1979).   The rationale for this extension of liability is that "it would be unjust to permit an employer to gain from the intelligent cooperation of others without being responsible for the mistakes, the errors of judgment and the frailties of those working under his direction and for his benefit."   Restatement (Second) of Agency § 219 comment a (1958).

Even if Blaney could be shown to have a financial interest in Meisels' activities, however, respondeat superior does not generally apply in the context of either active RICO allegations or to a RICO conspiracy allegation, which requires active acquiescence.   In the first instance, courts have found that while RICO liability is not limited to those with primary responsibility for the illegal enterprise's affairs, nor is it limited to those with formal positions in the enterprise, nevertheless "some part in directing the enterprise's affairs is required."   *Albright v. Attorney's Title Ins. Fund*, 504 F. Supp. 2d 1187, 1205 (D. Utah 2007) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993), and citing with approval *Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3rd Cir. 1993) ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.   There must be a nexus between the person and the conduct in the affairs of an enterprise.")).   *See also BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1101 (10th Cir. 1999) (precluding RICO liability of title companies because they did not directly perform any predicate acts forming a RICO pattern of racketeering activity but were, instead, merely providing their regular services that happened to benefit the alleged RICO scheme).

With the foundation that RICO liability generally requires some degree of knowing participation, a number of courts in the Tenth Circuit have dismissed RICO claims supported only by allegations of vicarious liability. *See Brannon v. Boatmen's First Nat. Bank of Okla.*, 153 F.3d 1144, 1150 (10th Cir. 1998); *Bank v. Rill*, No. CIV-07-417FHS, 2008 WL 1766730, at *3 (E.D. Ok. Apr. 14, 2008); *Thrailkill v. Champion Ford, Inc.*, 776 F. Supp. 1486, 1488 (D.N.M. 1991); *Greyhound Fin. Corp. v. Willyard*, No. 87-C-0911B, 1989 WL 201094, at *25 (D. Utah Dec. 26, 1989); *Beverly Hills Sav. v. Highfield Associates*, No. 87-259-M CIVIL, 1987 WL 61954, at *4 (D.N.M. Aug. 28, 1987).

Without specifically ruling for or against the theory of respondeat superior in connection with a RICO allegation, the Tenth Circuit in *Brannon* dismissed a RICO count alleging that a parent company was liable for the RICO violations of its subsidiary, solely on the basis that the subsidiary and its parent enjoyed a financial and corporate relationship. While the complaint contained adequate allegations that the subsidiary company had violated RICO, the circuit court found that the complaint fatally failed to allege any activity constituting a RICO violation against the parent company itself. *Brannon*, 153 F.3d at 1148–50.

A handful of lower courts in the Tenth Circuit have approached the issue more directly. In *Thrailkill*, the New Mexico District Court dismissed a complaint against a corporation after concluding that the corporation was not vicariously liable for the RICO violations of its employees. 776 F. Supp. at 1489. The court reasoned that vicarious liability did not attach because the corporation did not have "any knowledge of or acquiescence to the illegal acts," even if it did derive a benefit from the illegal conduct. *Id*. In *Beverly Hills Sav.,* another New Mexico

District Court wholly rejected the idea of respondeat superior liability for RICO violations, stating that "there is no respondeat superior or other vicarious liability for RICO violations . . . ."   *Beverly Hills Sav.,* 1987 WL 61954, at *4.

In *Greyhound Fin. Corp.*, the Utah District Court dismissed RICO claims against several financial corporations for the alleged violations of their employees because the plaintiff failed to show any evidence of those institutions' knowledge of or participation in the fraud.   *Greyhound Fin. Corp.*, 1989 WL 201094, at *25.   That court held that RICO liability is generally thought to be directed at the violator of the statutory scheme, and the "violator is the 'person' that has engaged in the unlawful conduct."   1989 WL 201094, at *24.

In *Rill*, an Oklahoma District Court dismissed a RICO claim against two parent companies for the acts of their subsidiary because the complaint did not allege that the parent companies were "the perpetrators of the alleged racketeering activity."   *Rill*, 2008 WL 1766730, at *3.   The *Rill* court also found "the more well-reasoned view to be that vicarious liability is at odds with the intent and purpose of RICO."   It explained:

> An employer who is not an active participant in the scheme to defraud cannot be held accountable for its employees' racketeering activities because the statute is designed to impose liability upon a corporation which is a perpetrator of illegal activity . . . not upon an unwitting conduit of its employees' RICO violations.

*Id.*, at *3 (citations and quotations omitted).

Leaving some room for argument, however, Senior District Judge Babcock, in *Dolin v. Contemporary Fin. Sols., Inc.*, 622 F. Supp. 2d 1077, 1088 (D. Colo. 2009), denied a motion to dismiss a Colorado Organized Crime Control Act–Colorado's version of RICO-claim because "federal precedent provides some suggestion that RICO would allow for vicarious liability under

the respondeat superior theory in the present case."   Instead of a blanket prohibition on vicarious

liability in the context of RICO, Judge Babcock instead examined the role of the employer and

whether the employer corporation was a central figure in the scheme verses an unwitting

instrument.   *Id.*

Consistent with holdings of the great majority of the applicable cases in the Tenth Circuit,

this court concurs that adopting the doctrine of respondeat superior to a civil RICO lawsuit would

disrupt the explicit statutory scheme of § 1962(c).   Moreover, the court also disagrees that in the

context of RICO, the court can impute the requisite specific intent from an employee to his

employer absent facts independently supporting such an inference as to each in order to impose

RICO liability.

To the extent Plaintiff's First Claim for Relief claims liability for a § 1962(d) RICO

conspiracy as well as § 1962(c) RICO, this court finds that a RICO conspiracy under § 1962(d),

like any conspiracy claim, requires knowing participation in the conspiracy.   *See United States v.*

*Markopoulos*, 848 F.2d 1036, 1040 (10th Cir. 1988); *United States v. McMahon*, 562 F.2d 1192,

1196 (10th Cir. 1977); *Greyhound Fin. Corp.,* at *15.   Because a RICO conspiracy claim must

contain as an element the requisite intentional agreement to further a RICO endeavor, this, of

necessity, assumes a defendant's "knowledge of the conspiracy and intent to join or further the

objectives of the conspiracy."   *Lochhead v. Alacano*, 697 F. Supp. 406, 415 n.6 (D. Utah 1988).

Such a requirement is wholly inconsistent with respondeat superior liability.

In this case, the Complaint alleges that an attorney employed by Defendant, Alvin Meisels,

violated RICO in various ways and that since "[t]he acts and failures to act by Meisels were within

the scope of his agency and employment" Meisels acts should be imputed to Blaney even if Blaney knew nothing of the alleged illegal scheme.   (Compl. at ¶ 25.)   This court rejects the theory that Meisels' activities can be imputed to Blaney to create RICO liability for Blaney.   As further support, the court notes that the Complaint alleges that Meisels joined Hutchens in a RICO conspiracy as early as 2005.   (*Id*. at ¶ 15.)   Meisels could not have agreed to actually join the conspiracy within the course and scope of his employment with Blaney, as he had been an alleged member of that conspiracy for many years prior to his short association with Blaney.   *Oki Semiconductor Co. v. Wells Fargo Bank, N.A.*, 298 F.3d 768, 774 (9th Cir. 2002).   Finally, although the Complaint asserts that Meisels knew of Mr. Hutchens's racketeering enterprise and conspired with Mr. Hutchens to violate the RICO statute (Compl. at ¶¶ 22–24), the Complaint ontains no allegations that Blaney knew of the alleged racketeering acts of Hutchens and his companies or the conspiracy involving Meisels and Hutchens.   In fact, the Complaint affirmatively asserts that Blaney did <u>not</u> know about Hutchens' illegal activities via its unabashed assertion, "Had the foregoing duties[to learn about Meisels' clients] been discharged, Blaney McMurtry *would have known* . . ." about such things as Huttchens' use of aliases to hide his criminal history and Hutchens' history of "collecting advance fees on bogus loan commitments." (*Id*. at ¶19.)

There are no facts set forth in the Complaint supporting any intent by Blaney to further a RICO pattern of racketeering of which it was apparently unaware between Miesels and Hutchens or that Blaney knowingly joined a conspiracy between the two.   Plaintiff even fails to ascend as

far as finding that Blaney was an unwitting instrument in the Meisels/Hutchens alleged RICO scheme; the Complaint utterly fails to show <u>any</u> participation of Blaney at all, witting or unwitting.

Therefore, accepting Plaintiff's factual allegations in the Complaint as true and construing all inferences in favor of Plaintiff, the Complaint fails to state a valid claim against Defendant Blaney for a substantive violation of 18 U.S.C. § 1961, including a substantive claim based on § 1962(c) and a conspiracy claim based on § 1962(d).   Therefore, Plaintiff's First Claim for Relief is dismissed pursuant to Rule 12(b)(6).

### B.   *RICO Extraterritoriality*

Defendant also argues that it cannot be liable for the alleged RICO violations because the alleged racketeering enterprise's "nerve center" is in Canada, and the allegedly fraudulent acts committed by its employee occurred in Canada, not the United States.   (RICO Mot. at 10–14.)   In the CGC Class Action, the Tenth Circuit addressed but did not rule on the extraterritoriality of RICO.   *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1096–98 (10th Cir. 2014) (addressing "whether the complaint alleges a domestic application of RICO despite its extraterritorial tenor given the Canadian persons and entities").   The question of the extraterritoriality of a statute is a merits question.   *Id*. at 1098.   Taking the hint from this court's controlling circuit and notwithstanding the parties' attention to this issue, this court will not decide the merits of whether the claims involve an extraterritorial application of RICO because the court ultimately dismisses Plaintiff's RICO claim pursuant to Rule 12(b)(6) for failure to state a valid claim against Blaney as noted *supra*.

### III.     *Federal Jurisdiction*

There are two statutory bases for federal subject matter jurisdiction: federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332.   Plaintiff has alleged both in this case, citing to 18 U.S.C. § 1965 and 28 U.S.C. §§ 1331 and 1332.   (Compl. at ¶ 6.)   The Court must construe the jurisdictional statutes strictly.   *See United States v. Pethick,* 513 F.3d 1200, 1202 (10thCir. 2008).   Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."   "For a case to arise under federal law within the meaning of § 1331, the plaintiff's well-pleaded complaint must establish one of two things: either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."   *Firstenberg v. City of Santa Fe,* 696 F.3d 1018, 1023 (10thCir. 2012) (internal quotation marks omitted).   Plaintiff's First Claim for Relief asserted a federal question allowing jurisdiction pursuant to § 1331.   However, now that the federal question claim has been dismissed, Plaintiff may only proceed by showing the existence of another federal question, or by showing that diversity jurisdiction is appropriate.

Pursuant to Rule 12(h)(3), the Court must dismiss an action if the Court lacks subject matter jurisdiction.

> Federal courts are courts of limited jurisdiction.   They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.

*Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994) (citations omitted).   The issue of subject matter jurisdiction may be raised *sua sponte* by the Court at any time during the

course of the proceedings.   *See McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988).   As the party invoking federal jurisdiction, it is OCD Telluride's burden to allege facts that demonstrate the case falls within the Court's limited jurisdiction.   *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008).

The only remaining claim in the Complaint is one for negligent misrepresentation.   The claim for negligent misrepresentation sounds in state law.   *Stratton v. United Launch Alliance, L.L.C.*, No. 13-CV-01756-RBJ-KLM, 2014 WL 4638720, at *9 (D. Colo. May 23, 2014).   This is a claim that "[f]ederal law neither created . . . nor is federal law a necessary element . . . ."   *Tinner v. Farmers Ins. Co., Inc.*, 504 F. App'x 710, 714 (10th Cir. 2012).   Therefore, diversity is the only remaining ground on which Plaintiff may invoke this court's jurisdiction.

Section 1332(a) provides in relevant part that "[t]he district courts shall have original jurisdiction of all civil actions where the amount in controversy exceeds the sum or value of $75,000 . . . and is between (1) citizens of different States."   Plaintiff and Defendant are both unincorporated associations that retain the citizenship of each of their members.   Given that partnerships are not citizens for diversity purposes, the Supreme Court has long held that courts are to look to the citizenship of all the partners or members of other unincorporated associations to determine whether the federal district court has diversity jurisdiction.   *Chapman v. Barney*, 129 U.S. 677, 682 (1889).   *See Hale v. MasterSoft Int'l Pty. Ltd.,* 93 F. Supp. 2d 1108, 1112 (D. Colo. 2000) (collecting cases) ("A limited liability company [or partnership] is a citizen of the states of which its members are citizens. . . .");* Enserco Energy, LLC v. Baugues*, No. 14-CV-01548-RBJ, 2014 WL 3767060, at *2 (D. Colo. July 31, 2014).   *See also Lincoln Prop. Co. v. Roche*, 546 U.S.

25

81, n.1 (2005); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 196–97 (1990); *United Steelworkers of Am. v. Bouligny*, 382 U.S. 145, 151 (1965); *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 456 (1900).).   *See also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (holding that a party's domestic citizenship but foreign domicile renders that party "stateless" and destroys complete diversity under 28 U.S.C. § 1332).

The Complaint in this case only states that "Plaintiff, OCD Telluride LLC, is a Colorado limited liability company" (Compl. at ¶ 4) and "Defendant Blaney McMurtry LLP is a Canadian law firm with offices at 2 Queen Street East, Suite 1500, Toronto, Ontario (*id*. at ¶ 5).   The Complaint fails to identify or state the citizenship of either Plaintiff's or Defendant's members or partners.   Therefore, Plaintiff has failed to meet its burden to assert diversity jurisdiction, and the remainder of the case must be dismissed without prejudice for lack of subject matter jurisdiction pursuant to Rule 12(h)(3).

Given that dismissal for lack of subject matter jurisdiction is without prejudice, the court acknowledges that it may be possible for Plaintiff to establish diversity of citizenship between Plaintiff and Defendant with the filing of an Amended Complaint, thereby salvaging its state law claim of negligent misrepresentation.   Accordingly, the court grants Plaintiff ten days from the date of this order to file an amended complaint as to the negligent misrepresentation claim only to attempt to cure the jurisdictional deficiencies.   Failure to file an amended complaint by this deadline will result in this lawsuit being dismissed.   If plaintiff files an amended complaint, defendants may answer, move, or otherwise respond as necessary.

It is therefore

ORDERED that "Defendant's Motion to Dismiss for Lack of Standing and for Summary Judgment" [Doc. No. 47] is DENIED.   It is further

ORDERED that "Defendant's Motion to Dismiss Plaintiff's RICO Conspiracy Claim" [Doc. No. 29] is GRANTED.   The First Claim for Relief is DISMISSED with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).   The Second Claim for Relief is DISMISSED without prejudice for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).   It is further

ORDERED that the effect of this dismissal as to Plaintiff's Second Claim for Relief is STAYED for a period of ten days to allow Plaintiff to file an Amended Complaint and cure the jurisdictional defect.   The Plaintiff shall have ten days to file an Amended Complaint, consistent with Fed. R.Civ. P. 11, failing which the stay shall lift and the case shall be dismissed, judgment to enter for Defendant and against Plaintiff.

Dated this 13th day of January, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

27